The next case today is Thomas Schwartz v. Norman Sylvester et al., Appeal No. 21-1568. Attorney Solman, please introduce yourself for the record and to proceed. Good morning, Mr. Chief Judge and members of the Court. Joseph Solman for the Appellant Plaintiff, Thomas Schwartz. May it please the Court. There are two major flaws with the District Court's decision granting summary judgment in favor of the defendant, Norman Sylvester, based on qualified immunity. First, the finding by the Court that rational basis review rather than strict scrutiny applied to Chief Sylvester's directive for Thomas Schwartz to photograph was an error because the District Court found that the order was neutral and generally applicable, was based on improper fact-finding by the Court. The second major error was the District Court improperly found that the law was not clearly established at the time, in part because the District Court improperly analyzed my client, Mr. Schwartz's, religious beliefs, which is not the role of the Court. The law is clear under LUCUMI 508 U.S. 533 that a policy or rule is not neutral under the Free Exercise Clause if the object of the policy is to infringe upon or restrict practices because of their religious motivation, or if the purpose or rule is to coerce the employee into violating sincere religious principles. Now, an important corollary to that is that subtle departures from neutrality on matters of religion are prohibited. Now, on this issue, the District Court erred in resolving disputed facts in favor of the defendant rather than leaving disputed facts for the jury on the key issue of when… …factors or what evidence would you say that you presented that creates a genuine issue or material fact that the judge could not have entered, you know, made a finding against your client? Thank you, Judge. There, Your Honor, it's really the course of emails and correspondence that led to May 2nd. This is around the beginning on November 4th was when the Class A photographs were first discussed. On November 4th, there's communication from, I think it was Lieutenant, there's a blank in his name right now, saying anyone wishing to have a Class A photograph will be here on Friday. So, that was clearly voluntary. January 30th, this is Lieutenant Emberg. On January 30th, he says, there's another communication that says, Lieutenant Emberg has been working to arrange professional photos. And the next communication is March 11th, where it says, in the next few weeks, all members will be getting a department photo taken by the department photographer. So, it goes from anyone wishing to have a Class A photo to has been working to arrange professional photos to, in the next few weeks, all members will be getting a department photo. None of those communications are from the Chief itself. Then on April 11th, the next communication is Class A photos will take place at Station One for each group. So, it goes from wishing to will take place. But again, that by April 11th, it's still somewhat ambiguous. On May 2nd is the key day. That's when Lieutenant Weeks has a conversation with Schwartz and says, hey, the Class A photos are happening. And Schwartz says, I have a religious objection. By this date, there has not been a communication from Chief Sylvester to Mr. Schwartz about the photos at all. And there has not been any communication saying it's an order. Why is that significant? Because it's significant because at this point, for two reasons, I believe. In general, I think a reasonable jury could say it's not an order at this point. It's not clearly mandated. Why is that significant? Eventually, it becomes an order. And the question is, is there a basis for concluding it became an order in response to the religious objection rather than in response to the desire to make a photograph be taken? It's the latter. It's neutral. So, what is supportive of the idea that it was because there was a religious objection? Is there some comparator who also objected, who was not made to take a photograph? I don't think we need a comparator here under the free exercise clause, Your Honor. But I do... What you have is somebody objects, and then they say, well, if you're going to object, you have to come. So, how is that a basis for finding it's on the grounds of religion? The basis, well, is Lt. Weeks, who just had this discussion on May 2nd with Lt. Schwartz, said he did not understand it was an order until Mr. Schwartz raised his objection. And then after... What I'm saying is, what we don't know is that that's because it was religious. How would a juror be able to find it was because it was religious rather than because he wasn't going to sit for the photograph? If there's no one... Everyone else complied, correct? That's right, Your Honor. And no one has ever not complied in the entire history of photographs being taken, at least as the record shows, correct? Well, this is the only time we know of that there's been a request to have Class A photographs taken like this. What does that mean? I mean, let me put it this way. There's no other... There's nothing else on the record about a history of Class A photographs being taken. There's no... The record was not developed as to what the history of having Class A photographs. But that doesn't go to the religious motive. Where's the religious motive on getting those photographs taken? Well, when Mr. Schwartz said, you know, I have a religious objection, Mr. Sylvester, I mean, Chief Sylvester's response was, I don't understand this. This doesn't, you know, I don't understand the religious objection. Four minutes remaining. Four minutes. And he went back and asked for, and asked for it in writing. If it was always in order, if it was always... Yes, I wanted to ask you about that. Are you arguing that the Chief's request that you put it in writing so he could understand better, are you saying that was discriminatory against religion? I'm not saying the request itself, but I'm saying the fact that he asked for it is evidence... Yeah, what's wrong with that? And how is that evidence of any religious bias? I'd like greater clarity. Please put it in writing. My argument is that if it was always in order, he would have simply said... I think you're just missing... It's in order. With respect, that's the point you're missing. You're focused on whether it was always in order, and then it became in order. We're trying to ask you, we're not, I'm not disputing that the record shows that, that it may not have been in order, and then it finally became in order when there was an objection. What I'm asking you is, even if all that's true, how does the fact that it became in order when there was an objection show that it did so for religious reasons, as opposed to because he wanted to ensure compliance, which would be neutral? Well, my response, Your Honor, is that it doesn't prove it, but it's evidence of it. And if it's evidence of it, it needs to go to the jurors. How is it evidence of it? Because he did it right away, and it's... But it's the only time there was an objection, according to the record, so it's a circumstance of one. It is no more likely that it was religious than it was not religious. So how could a juror, based on anything other than speculation on this record, conclude that it was being done because of the religious nature of the objection, as opposed to because of the objection? Well, this is where I would, this is where I would look to the district court's exploration of my client's religious objection. This is a classic example of a voluntary workplace program becoming mandatory when somebody raises a religious belief. I mean, if there's a softball league on Saturdays, and a Jewish person says, I can't participate because it's Sabbath, he says, you know what, it's going to be a mandatory, now it's mandatory for everybody. And I think that would raise an influence that it's because of religious objection. You know, the facts here are, your client said, my religious belief is, I don't believe in self-promotion, but I have no objection to mere use for identification and administrative purposes. So the chief replied, it's mandatory because the department needs it for administrative purposes and identification purposes. Your client at that point had already said, I have no religious belief as to the category that the chief responds with. So how can one possibly draw an inference of religious discrimination here? I don't think we're, we're not allowed, I believe, under the free exercise clause to examine. He said it was religious based. This has nothing to do with the examination. It has to do with his statement of what it was and as to the grounds as to which he would have no religious objection. And the chief responds with those grounds that have nothing to do with his religious objection. So how can one draw the conclusion that the chief's desire to have him do what everybody else did for identification and administrative purposes was motivated by religious discrimination? Your client's own words established the case against him. It was, I would argue it's motivated by his religious objection. If he said, you know, he raised a religious objection and he didn't ask any questions about it, what was the basis of it? He simply overruled them. There's... Oh, no, no, no, no. He was asked to explain to the chief. The chief was, did not think that subjecting him to cross-examination in their conversation was appropriate. So he asked him to put it in writing. And then the written response was, well, here is my objection. But if the photo were being taken for other purposes, my objection wouldn't go that far. Because, which is why, which is how he explained his religious, his understanding of the person. Oh, I see. So the argument is religious discrimination is shown merely by saying, I have a religious objection. That's what your argument comes down to. I believe if you state a religious objection, and it's, I don't believe the First Amendment requires you to explain the entire scope of the religious objection, or the employer... No, no, no. You're missing the point. Okay. It was your own client who said, if it was being taken for other purposes than the purposes to which I have a religious objection, self-promotion, then I have no problem with it. That's right. And then the chief said... Can I give you an analogy, maybe just using your softball example? If they say, you have to come to the softball game, and then the employee says, well, I can't make it on a religious holiday. And then they say, okay, well, tell me when the religious holiday is. And he says, it's on Saturday. And he says, well, great, you can come to the game. It's on Friday. Right. Then he says, I'm not coming on Friday. He says, well, then you're fired. That wouldn't show religious discrimination. Of course not. And that's what I think the record here, the question to you that we're trying to get you to answer is, he says, take the photograph. He says, I can't take it for religious reasons. He says, why is that? He says, because I can't sit for promotional purposes. He says, well, that's fine. This is for accountability purposes. And he says, I'm still not taking it. He says, you're fired. So what's wrong with... Where are you seeing something that I'm not seeing? I disagree that the record says that, because I don't think it says it's for accountability. And we said in our brief, I apologize, I think I missed the point. We said in our brief, if Chief Sylvester simply said, we agree, we'll do this for accountability. We won't put it up on the wall. We won't send out to the media. And I think I addressed this in my reply brief. We'll just keep it for accountability, for the tag. That's fine. My client would have been fine with that. But they didn't say that. They said, we're going to send this to the media. We're going to send this out. My client would have been fine with that. Absolutely. But that's not what the plan was for. The plan was to send this out to the media, to put this up on the wall. That's what Chief Sylvester said he was going to do. So you're absolutely right about that. If they had narrowed this, we would call it... Okay, so on that point, you say the record supports the view that they never made it clear that it was going to be only for accountability purposes. To the opposite, they also made it clear that it could be used for promotional purposes. Yeah, so I apologize. I think I missed the point there. On that point, then I guess last thing before your time ends, what do we do about the fact that we don't have a comparator and all we have is a person? Because if Employment Division v. Smith was not on the books, the fact that there is a religious objection stated would be enough to trigger some scrutiny. But Employment Division v. Smith is on the books. And so if you have a generally applicable rule that you have to take a photograph, whether for accountability purposes, promotional purposes, or any purpose, and you object to it on religious reasons, that does not trigger heightened scrutiny. Because that's a neutral rule. And what you're saying is, well, it wasn't in order until he objected. But I still haven't heard an answer to the question of, but he did object. And all we know is that when someone objects, they will require you to do it. How do we know that they will require you to do it only when you object for religious reasons? That's my question. I don't see what in the records is helping you with that. So if you could help me on that point, that would be good. Well, I think my response is what Chief Semester said during his testimony that he was confused by it. He never heard anyone making an objection based on this. He never, he didn't understand it. And I think that shows some level of, I wouldn't say hostility, but confusion. And I think there's an inference that can be drawn that if somebody had said, you know, made a request for maybe a medical objection or a medical exception, it would have been granted. That's my best response. Okay. Thanks. Thank you. Thank you, Attorney Solomon. At this time, if you'd please mute your audio and video. Attorney Notice, if you could unmute your audio and video and introduce yourself on the record to begin. Thank you. May it please the court. Gareth Notice for the Appellees, Norman Sylvester and the Town of Bourne. I think that Judge Saylor's decision was sound. It was comprehensive. He hit all of the, he cited all the appropriate cases and he applied all the correct standards. He did not, there are no genuine issues of material fact that should alter his decision and cause the court to send this back to Judge Saylor for a jury trial. Judge Lynch hit the nail on the head when she talked about the May 2nd email. From a public actor's perspective like Chief Sylvester, he overhears the conversation between Weeks and Schwartz where Schwartz says, well, I'm not going to sit for the photograph. A reasonable actor would ask for clarification. He called Schwartz into his office. He asked him why he would not sit. He said it was about a religious objection. The record is not clear as to whether he explained exactly what his religious objection was. So a reasonable public actor like Chief Sylvester would say, okay, well, please clarify this in writing. That's exactly what he did. And when he gets the writing back, Schwartz says, well, I don't object if it's going to be used for accountability. And so in response to that, that's exactly what Chief Sylvester said. He said, okay, fine, we're going to use this for accountability purposes. I don't recall him saying only use it for that purpose. Did he use the word only? He didn't, Your Honor. You're correct. He said this is going to be used for accountability purposes. But that's not, I guess, to take your opponent's argument, which would be helpful for you to That's not quite responsive to the religious objection. If I say, I won't sit for promotional purposes, but I will sit for accountability purposes. And I say, well, it's going to be used for accountability purposes. There's a kind of a negative fragment there, which is, are you going to use it for promotional purposes? And he never says he won't. And isn't there enough in the record for a juror to find that it would be used for promotional purposes? You're not even denying that it might be. The fact of the matter is that it never was used for promotional purposes. That's not relevant to whether he thought it could be or that the chief was maintaining that it could be. The fact of the matter is that the chief never says, well, I may use this for promotional purposes. He asks for clarification. The relevant question, though, is whether a juror could find that he was going to use it or was reserving the right to use it for those purposes. Couldn't a juror find that on this record? I don't think so, because of what happens on May 2nd. When May 2nd comes around, Chief Sylvester understands that Swartz has this objection to it being used for self-promotion, and he clarifies it directly and unambiguously to Mr. Swartz. I thought you just said he didn't say only. That would have been unambiguous. Well, I don't think there's any ambiguity in his email whatsoever about what it's going to be used for. The key fact is that after that, despite getting this order from Chief Sylvester, Mr. Swartz then again refuses to sit for the photograph. He's not disciplined for his religious objection. He's disciplined for, okay, we've clarified it now. It's for accountability purposes. You have two days to come sit, and he declines to come sit, and then he's given a further hearing about it. Does the record show at that point, when he gets the clarifying message or the response from the chief, and then he says he's not going to sit again, does he at that point restate the concern that it'll be used for promotional purposes? Is there anything in the record showing that he does so? No, there is not, Your Honor. There's nothing in the record. We just have- We have some case law that suggests that for qualified immunity purposes, a reasonable mistake of fact on the part of the public actor is also relevant to the qualified immunity analysis, and so how does that play into this question? In other words, if you could just address, there's the question of whether this was a generally applicable rule, and then there's the question of whether the chief reasonably could have thought it was a generally applicable rule. Is that the right way to think about it for qualified immunity purposes? The second way? Yes, I think it would be. I think there's no question that the chief intended this to apply to everybody. If there was any question in his mind that was clarified by Lieutenant Emberg's May 2nd email, where he said this is mandatory for the chief, per the chief's order, that was clearly generally applicable. It applied to everybody neutrally. Was that statement about it being mandatory and communicated to the whole force or only to this one, just to the plaintiff? No, it was communicated to the entire force by the email from Lieutenant Emberg on May 2nd, so from a reasonable actor standpoint, Chief Swartz, understandably, might have understood from his meeting with Swartz, okay, there's some confusion here. Swartz thinks that this is voluntary. I've now told him in person that it's mandatory. Five minutes remain, five minutes remain. And by the way, I'm going to contact Lieutenant Emberg and have him send out an email to the entire force saying this applies to everybody and everybody needs to sit, and ultimately everybody does sit, including Swartz. Eventually, Swartz sits for the photograph. So I think there's not a dispute here that a jury could find that there was any bias whatsoever on Chief Sylvester's part. From a reasonable public actor standpoint, when he asked exactly what the religious objection was, he really didn't get any sort of specific clarification whatsoever from Swartz to be able to discern, okay, well, this might be a constitutional violation. Now, after the fact, when Swartz is deposed and he files this lawsuit, he certainly elaborates on it and he says, well, it's because of self-promotion purposes and it's a violation of my First Amendment rights. That conversation never occurs with Chief Sylvester at the May 2nd meeting or in writing or at that May 13th hearing where Weeks is also present. And so, we can go back and Monday morning quarterback this in hindsight, but looking at it from Chief Sylvester's standpoint, first of all, there's no case law out there, there's no firmly established violation that's out there that says that this type of order would be a violation of somebody's religious rights. But he's not getting any sort of clarification whatsoever from Swartz that should have tipped him off that this was a violation of his religious rights. In fact, what does he get? He gets the response from Swartz in writing saying, well, okay, if it's for accountability purposes, then that's fine by me. I'll sit for the photograph. And then ultimately, he doesn't. And that is what he is disciplined for. And so, I don't think there's any error whatsoever in Judge Saylor applying a rational basis test to this analysis and then ultimately saying there certainly was a rational basis for Chief Sylvester's order. Let me ask you, going to a rational basis, does the summary judgment record support that there, as Judge Saylor found, a legitimate state interest? Are there any issues, genuine issues, material fact as to that, or does the record support that? I think the record clearly supports that. And I don't think that the appellant is really even challenging those issues. The Chief Sylvester articulated multiple reasons for his order. One, he wanted a professional department. Two, he wanted these on IDs to make them uniform. Three, he wanted to have it up on a board so it could be clearly visible when the public came in to identify a firefighter. There were a host of reasons. This is a paraprofessional environment. To have firefighters on IDs when they're going into homes in an emergency basis in a t-shirt is not reasonable. There really isn't a dispute that there were legitimate rational reasons. There would not be a dispute under whatever, the various grounds, they would still surpass that legitimate state interest test, correct, on your position? That is correct, Your Honor. Okay, thank you. You're welcome. I'll yield the rest of my time to the extent I have any and rest on my papers. Thank you very much. Thank you. Thank you, Mr. Notice. At this time, please mute your audio and your video. Mr. Solman, I don't believe we have any rebuttal today, sir. So, I guess we don't. Thank you. That concludes the argument for today.